3/3/2016 3:30:30 PM
Chris Daniel - District Clerk Harris County
Envelope No. 9419433
By: Krystal Franklin
Filed: 3/3/2016 3:30:30 PM

No. _____

| | | |
|---|---|---|
| **ERIKA ARROYO,** | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| v. | § | FOR THE _____ DISTRICT |
| **OPRONA, INC., ROSEN SWISS AG,.** and **CHRIS F. YOXALL,** | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

### PLAINTIFF ARROYO'S ORIGINAL PETITION

Erika Arroyo, hereinafter Plaintiff, petitions this Court for relief provided by law based on claims set forth herein against Oprona, Inc., a Texas corporation doing business within this State and County as Rosen, as Rosen USA Inc., as Rosen USA; and as Rosen North America; against Rosen Swiss AG, a Switzerland corporation, of which Oprona, Inc. is a wholly owned subsidiary, and that is doing business in Texas independently and through Oprona, as shown below, and Chris F. Yoxall, Vice President of Rosen Asia Pacific and Rosen USA/Mexico, acting independently and as agent under the supervision and direction of the executive administration of Rosen Swiss AG, all referred to collectively as Defendants and individually by name.

Plaintiff Arroyo's Original Petition                                       Page 1



1.

## DISCOVERY PLAN

Discovery in this action is intended to be conducted subject to a discovery plan by rule (Level 2), as set forth in Rule 190.3, Tex.R.Civ.P. It is intended that limitations on discovery be applied in accordance with Subsection (b) of the Rule.

2.

## NATURE OF THE ACTION

2.1 Plaintiff brings this action under the common law of Texas and the federal Racketeer Influenced and Corrupt Organizations Act (RICO) for damages and declaratory and injunctive relief, asserting that to her substantial damage she was terminated from employment for refusing to engage in unlawful activity and to preclude her interference with and permit the continuing conduct of unlawful activities of the Defendants.

2.2 Plaintiff seeks injunctive relief and damages of more than $200,000, but no more than $1,000,000.00, exclusive of statutory penalties, interest and attorneys' fees, an amount that is within the jurisdictional limits of this Court.

2.3 Venue is proper in Harris County, Texas, the county in which all of a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred.

3.

## THE PARTIES

3.1 Erika Arroyo is an adult, female citizen of the State of Texas, a resident of Houston, Harris County, Texas, and during times material to this action an employee of the Defendants at the offices of Defendant Oprona, Inc., d/b/a Rosen USA.

3.2 Oprona, Inc., is a Texas for-profit corporation, with principal office located at 14120 Interdrive East, Houston, Texas 77032, doing business under the assumed names above listed, including Rosen USA, and as 100% owner of Toolrona, LLC; Logrona, Inc.; and Horona, Inc. Its registered agent for service of process is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

3.3 Rosen Swiss AG is a Switzerland for-profit corporation (under Swiss law, an Aktiengesellsschaft equivalent to a US corporation), with principal office located at Obere Spichermatt 14, 6370 Stans, Switzerland, doing business in Texas through overall management and control of the activities of Oprona, Inc., and otherwise. Process may be served on Rosen Swiss AG by serving Oprona, Inc., its domestic subsidiary, which is its involuntary agent for service under Texas law.

3.4 Chris F. Yoxall, as Vice President of Rosen, USA, acts under the direct supervision, management and control of Rosen Swiss AG, d/b/a the ROSEN Group, through its chief executive officer, Hermann Rosen. He also acted, for purposes of

this action, independently and for his personal interest. Process may be served on Chris F. Yoxall at the offices of Rosen, USA, 14120 Interdrive East, Houston, Texas, 77032, or at his residence, 42 Skyflower Drive, Spring, TX 77381-2981.

4.

## MATERIAL FACTS

4.1 Plaintiff was employed by Oprona, Inc., d/b/a Rosen USA, Inc., from on or about December 16, 2013, through on or about August 5, 2015, as Finance Manager at the offices in Houston, Harris County, Texas.

4.2 As Finance Manager, Plaintiff was responsible for financial matters and had access to financial records, including, but not limited to, tax information.

4.3 Rosen USA, Inc., is an operating company of the ROSEN Group, an international enterprise of more than 120 companies in the United States, Central America and Mexico, North and South America, Asia Pacific, Europe and the Middle East, with management and control by Rosen Swiss AG in Switzerland, as above set forth.

4.4 Companies of the ROSEN Group employ more than 2,700 individuals and are engaged in providing inspection and integrity process services and transportation in interstate and international commerce.

4.5 Plaintiff supervised a staff and reported to Mr. Yoxall, the executive manager of the Houston office of Rosen USA, Inc.

4.6 There was no Chief Financial Officer at the Switzerland corporate headquarters until October, 2014, when Oliver Kille assumed that position.

4.7 Upon assuming her position with Rosen USA, Plaintiff had some guidance from the predecessor in her position, Jan Frowijn, whom she replaced when he was promoted to Controller of the company.

4.8 Plaintiff, however, was required to independently familiarize herself with the company's financial operations and procedures, through conferences with members of her staff and examination of records.

4.9 Plaintiff discovered that payments were made to or in behalf of Mr. Yoxall that did not appear to have been booked in the company records in accordance with accounting practices and Internal Revenue Service regulations, including the following, among others:

> 4.9.1 Bank transfer payments of $10,000.00 a month from Rosen, USA, to Mr. Yoxall's personal account in Australia.
>
> 4.9.2 A $577,000.00 loan made in 2010 to Mr. Yoxall, on which no payments had been made in compliance with the loan agreement.

4.9.3 Payment for maintenance of and major improvements to Mr. Yoxall's private residence.

4.9.4 Payment of real estate taxes on Mr. Yoxall's residence.

4.9.5 Payments made for personal services to Mr. Yoxall, such as lawn care, swimming pool cleaning, and preparation of income tax returns.

4.10 Plaintiff also became aware of other payments by Rosen, USA, that provided compensation to Mr. Yoxall and other Rosen, USA employees and were handled in a manner that evaded taxes both on the employees and on Rosen, USA, by being booked generally as "personnel expenses."

4.11 Payments referred to above were made by the use of the United States mail and wire services.

4.12 When Plaintiff questioned the legality of the payments and suggested that they appeared to involve fraud that could subject the company to penalties and even criminal charges, Mr. Yoxall stated to Plaintiff that the payments were in accordance with arrangements made and approved by corporate officials of Rosen Swiss AG, including Herman Rosen, the Chief Executive Officer.

4.13 Plaintiff had no means to obtain guidance from the Switzerland corporate headquarters because the regular annual corporate meeting on financial matters was not held in 2014 and the Chief Financial Officer had resigned.

4.14 Plaintiff consequently began researching and closely monitoring financial activities that caused her particular concern.

4.14 On or about April 13, 2015, Mr. Yoxall requested that Plaintiff have a company check drawn for payment to the U.S. Internal Revenue Service of $96,922.00 due on Mr. Yoxall's personal income taxes.

4.15 Mr. Yoxall stated that he had obtained approval for the payment from corporate headquarters in Switzerland.

4.16 Because issuing the check as requested would have involved Plaintiff in violating federal law by making or assisting in the making of an income tax document fraudulent on its face, Plaintiff did not comply and sought confirmation.

4.17 Meetings on financial matters of the many Rosen entities were held in Switzerland from April 24 through May 1, 2015.

4.18 On or about April 29, 2015, during Plaintiff's attendance at the meeting in Switzerland she met with Oliver Kille, who had been named Chief Financial Officer asking for details on any agreement for the payment of Mr. Yoxall's personal income taxes and the apparent forbearance of loan payments for several years.

4.19 Mr. Kille informed Plaintiff that there was no documentation that could confirm any agreement to pay Mr. Yoxall's personal income taxes or to forbear requiring repayment of the loan to Mr. Yoxall.

4.20 Mr. Kille instructed Plaintiff to prepare, upon her return to Houston, a detailed list of her concerns about apparent fraud in the company's financial matters.

4.21 Upon information and belief, Plaintiff asserts that Mr. Kille discussed with Mr. Yoxall during the meeting in Switzerland the substance of what Plaintiff had communicated to Mr. Kille.

4.22 When Mr. Yoxall and Plaintiff returned to Houston from the Switzerland meeting, Mr. Yoxall began implementing retaliatory actions against Plaintiff, which eventually involved moving her out of her office, effectively depriving her of much of her authority and transferring that authority to a new hire.

4.23 When Mr. Kille became aware of the retaliation, he instructed Plaintiff on or about May 12, 2015, not to use company electronic mail or telephone, but to communicate with him directly by personal electronic mail.

4.24 On or about May 29, 2015, Plaintiff provided Mr. Kille with a list of payments for air travel by Mr. Yoxall and his family that totaled about $387,000.00, dating from 2012, for which there was no indication of their having been approved for company business.

4.25 Plaintiff informed Mr. Kille of other suspicious financial issues and on June 29, 2015, Plaintiff sent Mr. Kille a very detailed electronic mail, providing details on matters mentioned above and others.

4.26 Shortly after, Mr. Yoxall summoned Plaintiff to his office and angrily berated her, telling her that Mr. Rosen was extremely upset about Plaintiff's discussions with Mr. Kille.

4.27 Mr. Kille stated to Plaintiff that Mr. Rosen had asked that a meeting be scheduled in Houston with Mr. Yoxall to discuss matters that Plaintiff had presented and that Mr. Rosen had directed that an internal audit be conducted.

4.28 Mr. Kille visited in Houston during the week of July 13, 2015, for discussions with Mr. Yoxall.

4.29 After Mr. Kille left Houston, Mr. Yoxall increased the retaliation against Plaintiff, and on July 29, 2015, Mr. Yoxall asked that Plaintiff submit terms by which she would voluntarily leave her employment with Rosen USA.

4.30 Plaintiff informed Mr. Yoxall that she would not want to leave the company, and Mr. Yoxall asked that she consider the matter and get back to him.

4.31 On July 31, 2015, Mr. Yoxall had another angry discussion with Plaintiff about Plaintiff's questioning company payments for personal services to Mr. Yoxall.

4.32 Mr. Yoxall said that he had believed Plaintiff would voluntarily leave the company.

4.33 Plaintiff informed Mr. Yoxall that she did not want to resign her employment.

4.34 On August 5, 2015, Plaintiff was fired.

4.35 Upon information and belief, Plaintiff asserts that Rosen Swiss AG has not taken effective corrective action and largely has knowingly acquiesced in the fraudulent conduct above described and other conduct intended to evade taxes on Rosen Swiss AG or its entities.

4.36 Defendants terminated Plaintiff's employment in order to avoid responsibility for the fraudulent conduct and to prevent interference with its continuation.

4.37 The discharge of the Plaintiff was the culmination of a course of conduct that was brought about by her refusal to act in violation of the law, and but for such refusal the Plaintiff would not have been discharged.

## 5.

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

5.1 Plaintiff makes claims under the provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*

5.2 Defendants Oprona Inc. and Rosen Swiss AG are business corporations that individually and collectively constitute an "enterprise" as defined by 18 U.S.C. § 1961(4).

5.3 Defendants Oprona Inc. and Rosen Swiss AG are, and were at times material to this action, a passive instrument of racketeering activity, separate and distinct from Defendant Yoxall and other officers of the corporations.

5.4 At all times material to this action and at the present time, Defendants Oprona Inc. and Rosen Swiss AG engaged and are engaging in activities which affected and continue to affect interstate commerce.

5.5 Defendant Yoxall and one or more individual officers of Oprona and Rosen Swiss conducted or participated in the conduct of the enterprise in the manner above shown.

5.6 In the alternative, Defendant Yoxall and one or more individual officers of Oprona and Rosen Swiss, through an agreement to commit more than two predicate acts, conspired in a pattern of racketeering activity in knowing violation of the law.

5.7 At least from 2012 through 2015, Defendant Yoxall and one or more corporate officers of Oprona and Rosen Swiss engaged in a pattern of racketeering activity that included more than two separate but related acts of racketeering activity

<00852 Document 1-2 Filed in TXSD on 03/30/16 Page 12 of 17

to defraud the United States by knowingly making sworn declarations that were not true and correct as to every material fact, particularly tax documents.

5.8 At least from 2012 through 2015, Defendant Yoxall and one or more corporate officers of Oprona and Rosen Swiss engaged in a pattern of racketeering activity by procuring or conniving accounting documents required by the internal revenue laws to be falsely or fraudulently executed.

5.9 At least from 2012 through 2015, Defendant Yoxall and one or more corporate officers of Oprona and Rosen Swiss engaged in a pattern of racketeering activity by executing or attempting to execute a scheme or artifice with the intent to defraud the United States by mischaracterizing payments made to employees so that they would not be reported as taxable income in accordance with applicable laws and regulations.

5.10 Upon information and belief, Plaintiff asserts that Defendant Yoxall and one or more corporate officers of Oprona and Rose Swiss engaged in a pattern of racketeering activity by concealing income of Oprona by transferring such income to a foreign corporation to defraud the United States by evading taxes due.

5.11 In the commission of more than two predicate acts as above set forth, Defendants utilized the services of the United States Postal Service and utilized wire communication in interstate commerce.

5.12 Defendants terminated the employment of the Plaintiff and warned her against disclosing information or maintaining and disclosing records in order to further and protect the racketeering activities of their enterprise and to punish her for refusing to participate in the Defendants' unlawful conduct.

5.13 The acts of Defendants were not isolated, but rather formed a pattern of conduct through which they utilized the enterprise to defraud the Internal Revenue Service and United States taxpayers for personal monetary gain, corporate profit and to silence and keep Plaintiff from complaining about and exposing the Defendants' unlawful and fraudulent acts.

5.14 The acts of Defendants proximately damaged Plaintiff by loss of income in the past and in the future, physical and emotional distress in the past and continuing, and loss of the enjoyment of life in the past and continuing, and they have caused undue friction and stress in her family relationships.

5.15 Defendants acted intentionally to cause damage to Plaintiff for their own benefit and personal gain, and the award of damages to the Plaintiff should be increased to the maximum allowed by applicable law.

5.16 Defendants acted with respect to Plaintiff wilfully and maliciously and Plaintiff should recover exemplary or punitive damages consistent with the interests

of the public and the Defendants' ability to pay, in such amount as may be determined by the jury.

5.17 It was necessary and appropriate for the Plaintiff to retain the services of the undersigned attorney and counselor at law to advise her and to present and prosecute this claim, and accordingly, Plaintiff should recover from the Defendants, individually and severally, a reasonable attorney's fee as may be determined by the Court.

6.

## DISCHARGE AGAINST PUBLIC POLICY

6.1 As shown above, Plaintiff sought to obtain advice from the Rosen Swiss AG corporate office as to the legality or illegality of the financial operations of Oprona.

6.2 As shown above, Plaintiff refused to perform an act that she believed was in violation of the law.

6.3 Plaintiff's refusal to perform an unlawful act and her seeking advice on the legality or illegality of the financial operations of the Defendants, singularly or in combination, motivated the Defendants' decision to terminate Plaintiff's employment.

6.4 But for her refusal to perform an unlawful act and to seek advice on the legality or illegality of the financial operations of Oprona, singularly or in

combination, Plaintiff would not have been removed from her position and terminated from her employment.

6.5 In order to safeguard and vindicate the public policy and public interest of the State of Texas and its citizens, this Court should declare that the termination of Plaintiff's employment was in violation of the public policy to protect the personal interests of an employee who inquires about the legality of his or her employer's conduct or refuses to perform an act mandated by an employer that an employee believes would be in violation of the law.

6.6 Consistent with its declaration, the Court should grant such relief as it considers necessary to restore the employment rights of the Plaintiff, including the restoration of Plaintiff to the status she would have had, but for the Defendants' course of action against her in violation of public policy.

6.7 The acts of Defendants to wrongfully terminate the employment of the Plaintiff proximately damaged Plaintiff by loss of income in the past and in the future, physical and emotional distress in the past and continuing, and loss of the enjoyment of life in the past and continuing, and they have caused undue friction and stress in her family relationship.

6.8 Defendants acted with respect to Plaintiff wilfully and maliciously and Plaintiff should recover exemplary or punitive damages consistent with the interests

of the public and the Defendants' ability to pay, in such amount as may be determined by the jury.

6.9 It was necessary and appropriate for the Plaintiff to retain the services of the undersigned attorney and counselor at law to advise her and to present and prosecute this claim, and accordingly, Plaintiff should recover from the Defendants, individually and severally, a reasonable attorney's fee as may be determined by the Court.

## SUMMARY AND PRAYER

Defendants conspired to engage in racketeering activities through an enterprise and conspired to commit more than two predicate acts in furtherance of their racketeering scheme. Defendants terminated Plaintiffs' employment to punish her for refusing to perform an unlawful act, in violation of the public policy of the State, and Defendants were motivated by an intent to preserve and continue their racketeering activities and to silence and keep the Plaintiff from exposing their unlawful conduct.

Accordingly, Plaintiff prays that all Defendants be required to appear and answer, that this action be expedited as much as the business of the Court permits, and that upon the verdict of the jury the Plaintiff recover from Defendants, individually and severally, actual damages as found by the jury, tripled as provided

by law, exemplary or punitive damages as determined by the jury, her reasonable attorney's fees, and past and future interest as provided by law.

Further, in accordance with the Court's declaration of Plaintiff's rights, Plaintiff prays that the Court grant to the Plaintiff equitable relief, by injunction or otherwise, to restore to the Plaintiff her rights to employment and restore her to the rightful position of employment and to prevent any future interference by the Defendants with such rights. Plaintiff prays for all other and further relief to which she may show herself entitled at law or in equity.

Respectfully submitted,

DAVID T. LOPEZ & ASSOC.

/s/ David T. López

---

David T. Lopez
State Bar of Texas 12563000
3900 Montrose Blvd.
Houston, TX 77006-4959
Tel. 713-523-3900
Fax. 713-523-3908
E-mail: dtlopez@lopezlawfirm.com

## REQUEST FOR JURY

Plaintiff requests that all issues of fact in this action be determined by a jury.