United States District Court
Southern District of Texas
**ENTERED**
December 30, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIKA ARROYO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-852 |
| | § | |
| OPRONA, INC., ROSEN SWISS AG and CHRIS F. YOXALL, | § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court is Plaintiff's Motion to Confirm Service on Rosen Swiss AG (Doc. 7), Defendant Rosen Swiss AG's Motion to Dismiss for Insufficient Service under Fed. R. Civ. P. 12(b)(5) (Doc. 9) and the responses filed thereto. For the following reasons, it is **RECOMMENDED** that Plaintiff's motion be **DENIED** and that Defendant Swiss Rosen AG's motion be **GRANTED**.

### I. Statement of the Case

Plaintiff was employed by Oprona, Inc., d/b/a Rosen USA, Inc., from December 16, 2013, to August 5, 2015, as a finance manager in Houston, Texas.[1] Plaintiff alleges that during her employment with Oprona, she became aware that Chris Yoxall ("Yoxall"), chief operations officer of Oprona and Vice President of Rosen USA, Mexico and Central America, was directing payment of company funds to his personal accounts and was using company funds for payment of personal expenses in a way to evade the payment of U.S. income

---

[1] See Doc. 34, Pl.'s Arroyo's 1st Am. Compl. p. 4.

taxes.[2] When Arroyo refused to prepare and sign a check in the amount of $96,922 for payment of Yoxall's personal income tax liability, Yoxall instructed Arroyo's staff to prepare the check without her participation.[3] Arroyo complained to Rosen Swiss AG's Chief Financial Officer, Oliver Kille, who confirmed that the payments to Yoxall had not been approved by Rosen Swiss.[4] He instructed Arroyo to prepare a report outlining her concerns about Yoxall's financial transactions.[5] After Arroyo sent Kille a report, Kille met with Yoxall in Houston, Texas.[6] After that meeting, Yoxall berated Arroyo, limited her duties and supervisory authority, and ultimately terminated her employment a month later.[7]

On March 3, 2016, Arroyo sued Oprona, Rosen Swiss AG and Yoxall in state court, alleging violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and also alleging that her termination violated public policy.[8] The suit was removed by Defendants on March 30, 2016.[9] Relevant to the present dispute,

---

[2] See id. pp. 4-7.

[3] Id. pp. 7-8.

[4] Id. pp. 5, 10-11.

[5] Id. p. 11.

[6] Id. p. 13.

[7] Id. pp. 12-13.

[8] See Doc. 1-2, Pl.'s Orig. Pet., Ex. B to Defs.' Not. of Removal pp. 10-14.

[9] See Doc. 1, Not. of Removal.

the citation was directed to "ROSEN SWISS AG (DOING BUSINESS IN TEXAS INDEPENDENTLY AND THROUGH OPRONA) (SWITZERLAND FOR-PROFIT CORPORATION) MAY BE SERVED BY SERVING ITS REGISTERED AGENT CT CORPORATION SYSTEM, 1999 BRYAN ST. SUITE 900, DALLAS TX 75201."[10]

In her amended complaint, Plaintiff made the following allegations concerning Rosen Swiss AG's presence in Texas: Rosen Swiss AG did business in Texas as "Rosen Group through overall management and control of Oprona and otherwise."[11] "Rosen Swiss [was] an international enterprise operating worldwide, with more than 120 companies, including Oprona, in North, Central and South America, Asia, Europe and the Middle East, under its overall management and supervision."[12] Rosen Swiss AG was served through CT Corporation by service on Oprona, "as its domestic subsidiary and involuntary agent for service under Texas law."[13]

Arroyo further alleged that "[f]inancial matters of Oprona [were] specifically governed, monitored and controlled by Rosen Swiss."[14] In support of that allegation, Arroyo stated: (1) Oprona was required to use financial software approved by Rosen Swiss; (2) Rosen Swiss was required to approve capital investments exceeding

---

[10] Doc. 1-5, Citation Directed to Rosen Swiss AG.

[11] See Doc. 34, Pl.'s Arroyo's 1st Am. Compl. p. 3.

[12] Id. p. 4.

[13] Id. p. 4.

[14] Id. p. 9.

$100,000; (3) Rosen Swiss had access to all Oprona bank accounts; (4) Rosen Swiss made daily reviews of Oprona bank accounts; (5) Rosen Swiss swept funds from Oprona accounts to a Rosen Swiss account when any Oprona balance exceeded $1,000,000; (6) audits of Oprona were submitted to Rosen Swiss for review;(7) Rosen Swiss reviewed and approved Oprona's annual budget; and (8) Rosen Swiss had professional oversight over the operations of the Rosen Group.[15] Arroyo concluded that Rosen Swiss AG aided Oprona and Yoxall in the evasion of Yoxall's U.S. taxes.[16]

In its motion to dismiss, Rosen Swiss AG offered Yoxall's declaration, which averred the following: (1) Oprona was a U.S.-based company incorporated in Texas with its principal place of business in Houston, Texas;[17] (2) Oprona was a wholly-owned subsidiary of Horona, Inc., a holding company organized under the laws of Delaware;[18] (3) Horona, Inc., was a wholly-owned subsidiary of Rosen Swiss Holding AG, a company organized under the laws of Switzerland with a principal place of business in Stans, Switzerland;[19] (4) Rosen Swiss AG was a wholly-owned subsidiary of Rosen Swiss Holding AG and was a sister corporation of Oprona, not

---

[15] Id. pp., 9, 14.

[16] Id. pp. 14-15.

[17] Doc. 9-1, Ex. 1 to Defs.' Mot. to Dismiss, Decl. of Yoxall p. 1.

[18] Id.

[19] Id.

the parent of Oprona.[20]

Yoxall further averred that Rosen Swiss AG did not own stock in Oprona and Oprona did not own stock in Rosen Swiss AG.[21] Rosen Swiss AG and Oprona maintained separate bank accounts, financial and accounting records, income tax returns, budgets, payrolls and by-laws.[22] Rosen Swiss AG and Oprona shared one common director and corporate officer. Yoxall stated that Oprona made its own operational decisions "with, as appropriate and necessary, advice from Rosen Swiss.[23]" Yoxall concluded by stating that Rosen Swiss had no authority to hire, discipline, or fire Oprona's employees except as to executive management and, conversely, Oprona had no authority to hire, discipline or fire Rosen Swiss AG's employees.[24]

In rebuttal, Arroyo submitted her own declaration which stated that Oprona was "operated under close and continuous management of Rosen Group headquarters in Switzerland, and the executive management of Oprona was made by and subject to the Swiss headquarters, which operated as Rosen Swiss AG."[25] She further declared that Rosen Swiss AG approved Oprona's operating budget,

---

20  Id.

21  Id. p. 2.

22  Id.

23  Id.

24  Id.

25  Doc. 14-1, Decl. of Plaintiff p. 1.

along with any modifications required.[26] Rosen Swiss also directed that Oprona's funds be transferred "at times" to other operating companies, and Oprona was limited in the amount it could borrow or spend without approval from Swiss headquarters.[27]

## II. Legal Standard

Federal Rule of Civil Procedure ("Rule") 4 governs service of process. Rule 4(h)(1) provides that service upon a domestic or foreign corporation may be effected by delivering a copy of the summons and complaint "in the manner prescribed by Rule 4(e)(1)[28] for serving an individual," or "to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(A), (B).

If the corporation cannot be served within any judicial district, Rule 4(h)(2) requires that service on a foreign corporation be in conformity with Rule 4(f).[29]

Rule 4(f)(1) allows service of process by "any internationally agreed means of service that is reasonably calculated to give

---

[26] Id.

[27] Id.

[28] Rule 4(e)(1) allows service on an individual in a manner authorized by the state in which district court is located, or where service is made.

[29] Subsection (2) of Rule 4(h) states, "[A]t a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."

notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" ("Hague Convention").

The Hague Convention states "The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, Nov. 15, 1965, art. 1, 1969 WL 97765, 20 U.S.T. 361, T.I.A.S. No. 6638. The Hague Convention does not apply where service on a domestic agent is valid and complete. See Fed. R. Civ. P. 4(h)(1); Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 707 (1988). The court must determine the appropriate method of service by looking to the internal laws of the appropriate forum. Sheets v. Yamaha Motors Corp., U.S.A. 891 F.2d 533, 537 (5th Cir. 1990)(citing Volkswagenwerk Aktiengesellschaft, 486 U.S. at 699-706).

### III. Analysis

It is undisputed that Rosen Swiss AG, a foreign corporation, was not served in conformity with the Hague Convention. Plaintiff argues that Oprona is Rosen Swiss AG's "involuntary agent" for service of process based on its management of certain of Oprona's financial operations, and that service of the summons and complaint on Oprona was in conformity with Texas law, satisfying Rule 4(e)(1).

As outlined above, Article 1 of the Hague Convention states

that the Convention applies in all cases where there is occasion to transmit a judicial document for service abroad. If the Hague Convention is applicable, its provisions preempt inconsistent methods of service allowed by state law. <u>Volkswagenwerk Aktiengesellschaft</u>, 486 U.S. at 699. If a foreign corporation can be served without transmitting the appropriate documents abroad, then the Hague Convention does not apply. <u>Id.</u> at 707. There, the Supreme Court found that the Illinois long-arm statute allowed substituted service on the domestic subsidiary without sending documents to Germany, which proved to be the determinative factor in finding that service on the foreign company was complete when the subsidiary was served. <u>Id.</u> The Court stated, "Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications." <u>Id.</u>

Switzerland is a signatory to the Hague Convention,[30] therefore Rosen Swiss AG, a corporation organized under the laws of Switzerland, must be served via the Hague Convention unless it can be served directly through a domestic agent. <u>Id.</u>

The courts have been clear that, "As a general rule, however, the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely on the contacts with the forum

---

[30] <u>See</u> Status Table, Hague Convention on Private International Law (undated), https://www.hcch.net/en/instruments/conventions/status-table/?cid=17. Switzerland ratified the Convention on Jan. 1, 1995.

8

state of another corporate entity with which the defendant may be affiliated." Freudensprung v. Offshore Tech. Svs., Inc., 379 F.3d 327, 346 (5th Cir. 2004)(citing Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 335 (1925))(declining to attribute, for jurisdictional purposes, the presence of a subsidiary in a forum state to a nonresident parent corporation where the parent and subsidiary maintained distinct and separate corporate entities).

In a number of cases, courts have refused to uphold service of process on a domestic subsidiary, finding that the Hague Convention must be utilized to effect service on a foreign corporation. For example, in Pennebaker v. Kawasaki Motors Corp., U.S.A., 155 F.R.D. 153 (S.D. Miss. 1994), the plaintiff attempted to serve Kawaski Heavy Industries, a Japanese corporation, through its wholly-owned U.S. subsidiary, Kawasaki Motors, arguing that the domestic company was the agent of the foreign parent corporation. Id. at 154. The court rejected the plaintiff's argument that Volkswagenwerk Aktiengesellschaft allowed the exercise of state long-arm jurisdiction without reference to compliance with service under the Hague Convention. Id. at 156. It further found that removal of the case from state court did not operate to waive an objection to defective service of process. Id. at 158.

In Kim v. Frank Mohn A/S, 909 F.Supp. 474 (S.D. Tex. 1995), the court found that service of process on a foreign defendant was ineffective and that the Hague Convention must be followed. There,

the plaintiff argued that compliance with the Texas long-arm statute allowed it to serve process on the domestic subsidiary, citing Volkwagenwerk Aktiengesellschaft v. Schlunk. Id. at 478. The court disagreed, reasoning that because the Texas long-arm statute, Texas Civil Practice and Remedies Code § 17.045, required a plaintiff to forward a copy of the process and notice of service to the foreign corporation's principal place of business, service was not complete until those notices were sent in conformity with the statute. Id. And, as compliance with the statute required the transmittal of documents abroad, service could not be completed domestically, thus, the Hague Convention applied. Id. at 479.

Because there is a presumption of corporate separateness among related companies, in order for Plaintiff to effectively serve process and obtain personal jurisdiction over Rosen Swiss AG through Oprona, she must show that Rosen Swiss AG controls "the internal business operations and affairs" of Oprona, makding Oprona "its agent or alter ego, and hence fuse the two together for jurisdictional purposes." Freudensprung, 379 F.3d at 346 (quoting Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1160 (5th Cir. 1983))(internal quotation marks omitted). "The degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud and injustice." BMC

10

Software Belgium N.V. v. Marchand, 83 S.W.3d 789, 799 (Tex. 2002)(citing Hargrave, 710 F.2d at 1160, Conner v. ContiCarriers & Terminals, Inc., 944 S.W.2d 405, 419 (Tex. App. – Houston [14th Dist.] 1997, no writ)).

The Hargrave factors to consider in deciding whether Plaintiff has overcome the presumption of corporate separateness are: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." Id. (citing Hargrave, 710 F.2d at 1160); see also Gundle Lining Constr. Corp. v. Adams Cty. Asphalt, Inc., 85 F.3d 201, 208 (5th Cir. 1996)(also including, inter alia, the parent and subsidiary maintain common business departments, keep consolidated financial statements, and file consolidated tax returns; the parent finances the subsidiary; the subsidiary operates with grossly inadequate capital; the parent pays the salaries and other expenses of the subsidiary).

Plaintiff argues that the court must look to the factors discussed in Villagomez v. Rockwood Specialties, Inc., 210 S.W.3d 720 (Tex. App. – Corpus Christi-Edinburg 2006, pet. denied), to determine if the court can assume personal jurisdiction over a foreign corporation through service on its domestic subsidiary.

11

However, that case, which focused on minimum contacts of the foreign corporation for purposes of a personal jurisdiction analysis, did not address alter ego factors. The Fifth Circuit's Hargrave case provides the more applicable rule of law when determining if one corporation is the alter ego of another and, therefore, whether service of process on the alter ego is effective to bind the foreign corporation.

Turning to the first Hargrave factor, Yoxall avers that Rosen Swiss AG does not own stock in Oprona and Oprona does not own stock in Rosen Swiss AG. Further, Yoxall states that Oprona is not a subsidiary of Rosen Swiss AG but is a sister corporation. Arroyo does not contest these facts. No stock ownership and indirect ownership weighs in favor of a finding of corporate separateness. The second Hargrave factor, whether the companies have separate directors, headquarters and officers, shows a minimal overlap, as both companies have one common director and corporate officer, but both maintain separate headquarters. Again, Arroyo does not contest Yoxall's testimony on this point, and the court finds that Arroyo has not overcome the presumption of separateness concerning this factor. As to the third and fourth Hargrave factors, it appears undisputed that both companies have separate by-laws and maintain separate financial and accounting records.

The fifth factor, whether the parent company exercises complete control over the subsidiary's daily activities, requires

a more in-depth discussion. In her declaration, Arroyo points out that Rosen Swiss AG exercised more than minimal control over Oprona's funds and Yoxall agrees that Rosen Swiss AG provided "advice" when "appropriate and necessary."[31] Yoxall averred that Oprona made its own operational decisions, a fact that Arroyo did not contest, instead she focused on the financial controls imposed by Rosen Swiss to cap Oprona's allowed bank balances and its year-end financial reporting to Rosen Swiss AG. The court, after closely reviewing both declarations, acknowledges that, while it is clear that Rosen Swiss AG exercises significant control over Oprona's finances, Arroyo has not met her burden of proof to show *complete* control by Rosen Swiss AG. The court cannot find that the two entities are so intertwined as to become a single entity, as required by <u>Hargrave</u>. Reviewing the totality of the <u>Hargrave</u> factors, the court concludes that Arroyo has not overcome the presumption of corporate separateness. Oprona is not the agent or alter ego of Rosen Swiss AG.

Thus, the service of process issued in this case on Oprona does not satisfy Rule 4(h)(1) for service of process on Rosen Swiss AG. Plaintiff must comply with the service requirements of the Hague Convention if she desires to sue Rosen Swiss AG.

### IV. Conclusion

Based on the foregoing, it is **RECOMMENDED** that Rosen Swiss

---

[31] Doc. 9-1, Ex. 1 to Defs.' Mot. to Dismiss, Decl. of Yoxall p. 2.

AG's motion to dismiss be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 30th day of December, 2016.

NANCY JOHNSON
UNITED STATES MAGISTRATE JUDGE