United States District Court
Southern District of Texas
**ENTERED**
April 11, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ERIKA ARROYO, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-16-852 |
| § | |
| OPRONA, INC., ROSEN SWISS AG § | |
| and CHRIS F. YOXALL, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court is Defendant's Motion to Dismiss (Doc. 35) and the responses filed thereto. For the following reasons, it is **RECOMMENDED** that the motion be **GRANTED IN PART** and that the remaining state law claim be **REMANDED** to state court.

### I. Statement of the Case

Plaintiff was employed by Oprona, Inc., d/b/a Rosen USA, Inc., ("Oprona") from December 16, 2013, to August 5, 2015, as a finance manager in Houston, Texas.[1] Plaintiff alleges that, during her employment with Oprona, she became aware that Chris Yoxall ("Yoxall"), the chief operations officer of Oprona, was directing payment of company funds to his personal accounts and to his creditors in a way that she believed to be evading the payment of his personal U.S. income taxes.[2] When Arroyo refused to prepare

---

[1] See Doc. 34, Pl.'s 1st Am. Compl. p. 4.

[2] Id. pp. 4-7. For example, Arroyo alleges that monthly payments in the amount of $10,000 were paid directly to Yoxall's personal bank account in Australia and were not reflected as employee compensation and Yoxall also authorized a "loan" to himself in the amount of $577,000 that was never repaid or reflected as compensation. Id. at p. 5.

and sign an Oprona check in the amount of $96,922 for payment of Yoxall's personal income tax liability, Yoxall instructed Arroyo's staff to prepare the check without her participation.[3] Arroyo complained to Rosen Swiss AG's Chief Financial Officer, Oliver Kille, who confirmed to her that the payments to Yoxall had not been approved by Rosen Swiss AG.[4] He instructed Arroyo to prepare a report outlining her concerns about Yoxall's financial transactions.[5] After Arroyo sent Kille the report, Kille met with Yoxall.[6] After that meeting, Yoxall berated Arroyo, limited her duties and supervisory authority, and ultimately terminated her employment a month later.[7]

On March 3, 2016, Arroyo filed suit against Oprona, Rosen Swiss AG and Yoxall in the 269th Judicial District Court of Harris County, Texas, alleging that she was unlawfully terminated from her employment in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 ("Section") and Texas common law.[8]

Plaintiff amended her complaint on November 1, 2016, and

---

[3] <u>Id.</u> pp. 7-8.

[4] <u>Id.</u> pp. 5, 10-11.

[5] <u>Id.</u> p. 11.

[6] <u>Id.</u> p. 13.

[7] <u>Id.</u> pp. 12-13.

[8] <u>See</u> Doc. 1-2, Ex. A to Def.'s Notice of Removal, Pl.'s Orig. Pet. pp. 10-15.

Defendants Oprona and Yoxall filed the pending motion to dismiss on November 7, 2016.[9]

## II. Dismissal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant

---

[9] See Doc. 34, Pl.'s 1st Am. Compl.; Doc. 35, Defs.' Mot. to Dismiss.

has acted unlawfully." Iqbal, 556 U.S. 678. "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995)(citation omitted).

### III. Analysis

In the pending motion, Defendants argue that Plaintiff's amended complaint fails to state a claim upon which relief can be granted under the RICO statute and Texas common law.

**A. RICO**

Congress enacted RICO in order to prohibit conduct involving a pattern of racketeering activity. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006); Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer, 90 F.3d 118, 122 (5th Cir. 1996). "One of RICO's enforcement mechanisms is a private right of action, available to '[a]ny person injured in [her] business or property by reason of a violation' of the RICO's substantive restrictions." Anza, 547 U.S. at 453 (quoting Section 1964(c)).

In order to state a claim under RICO, a plaintiff must establish that a person has engaged in (1) a pattern of racketeering activity that is (2) connected to an "enterprise." Abraham v. Singh, 480 F.3d 351, 355 (5th Cir. 2007). The substantive requirements of Section 1962 are the same regardless of whether the suit is civil or criminal. St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 446 n.15 (5th Cir. 2000). Here,

4

Plaintiff alleges that Yoxall and Rosen Swiss AG operated Oprona as a criminal enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c)[10] and conspired with each other to operate Oprona as a RICO enterprise in violation of 18 U.S.C. § 1962(d).[11]

Defendants argue that Plaintiff has not pleaded either a pattern of racketeering activity or the existence of a continuing criminal enterprise. For the reasons discussed below, the court agrees.

### 1. Pattern of Racketeering Activity

"Racketeering activity" is defined in 18 U.S.C. § 1961(1) in terms of a list of applicable state and federal crimes. Individual acts of racketeering activity are known as "predicate offenses." <u>Word of Faith World Outreach Ctr. Church, Inc.</u>, 90 F.3d at 122. Here, Plaintiff argues that the allegedly untaxed compensation paid to Yoxall and the filing of Yoxall's tax return constitute mail and/or wire fraud because both were presumably accomplished either

---

[10] 18 U.S.C. § 1962(c) states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

[11] 18 U.S.C. § 1962(d) states:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

by use of the mail or by electronic transfer.[12] She also argues that she was terminated in retaliation for contacting or threatening to contact the Internal Revenue Service ("IRS"), [in violation of 18 U.S.C. §§ 1512(b) and 1513(e)].[13]

### a. Mail and Wire Fraud

To specify a predicate act of either mail[14] or wire fraud,[15] Plaintiff must meet the heightened standard of Rule 9(b). <u>Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.</u>, 975 F.2d 1134, 1138 (5th Cir. 1992). Rule 9(b) requires that a plaintiff must specify the fraudulent statement, identify the speaker, state when the statement was made, and explain why the statement was fraudulent. <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 551 (5th Cir. 2010).

There are a number of defects in Plaintiff's allegations of a

---

[12] <u>See</u> Doc. 34, Pl.'s 1st Am. Compl. p. 7.

[13] As discussed below, it is unclear from the amended complaint if Plaintiff actually contacted the IRS.

[14] The mail fraud statute, 18 U.S.C. § 1341, states in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses . . . for the purpose of executing such scheme . . . places in any post office . . . any matter or thing . . . shall be fined under this title or imprisoned not more than 20 years or both.

[15] The wire fraud statute, 18 U.S.C. § 1343, states in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, . . . transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years or both.

6

pattern of racketeering activity. Most glaringly, tax evasion,[16] making a false statement on a tax return,[17] or conspiracy to defraud the United States,[18] are not predicate offenses under the RICO statute.[19] Plaintiff has characterized these acts as mail and wire fraud, however, merely relabeling tax fraud as mail and wire fraud does not work in this case.

In this case, the alleged fraudulent misrepresentation is presumably Yoxall's averment to the IRS that all entries on his tax return were true and correct. This is not a misrepresentation upon which Plaintiff relied or to which Plaintiff was even a party. Therefore, despite Plaintiff's characterization of Yoxall's tax-evading actions as mail or wire fraud, the court finds that Plaintiff has failed to allege facts that would fall within the RICO statute's definition of a "racketeering activity."

Even if the court were to assume that a mail or wire fraud charge could be brought in connection with Yoxall's alleged tax evasion scheme, Plaintiff fails to allege that she was a target of, or proximately harmed by the fraud. The Supreme Court has made it clear that proximate causation is not present when the alleged harm

---

[16] See 26 U.S.C. § 7201.

[17] See 26 U.S.C. § 7206(1).

[18] See 18 U.S.C. § 371, sometimes known as a Klein conspiracy after United States v. Klein, 247 F.2d 908 (S.D.N.Y. 1957).

[19] See 18 U.S.C. § 1961(1)(enumerating the crimes that may comprise a "racketeering activity").

to the RICO plaintiff is distinct from the RICO violation. See Anza, 547 U.S. at 461; Holmes v. Secs. Inv'r Prot. Corp., 503 U.S. 258, 265-66 (1992).

In Holmes, 503 U.S. at 276, the Court rejected "but for" liability under RICO and found that the plaintiff must show that the RICO conspiracy proximately caused the injury claimed. The Court counseled that there must be some direct relation between the injury asserted and the racketeering conduct alleged. Id. at 268.

In Anza, 547 U.S. at 454, the Court considered whether a plaintiff had standing to complain of "racketeering activity" committed by a business competitor where the mail and wire fraud occurred in a scheme to avoid the payment of state sales taxes and the filing of fraudulent tax returns. The plaintiff argued that, by not paying state sales taxes, the RICO defendant could offer its goods at a lower price and thereby injured the plaintiff's ability to compete in the marketplace. See id. at 454.

Affirming the lower courts, the Court stated:

> [T]he compensable injury flowing from a violation of [Section 1962(c)] necessarily is the harm caused by the predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise."

Anza, 547 U.S. at 457 citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497 (1985))(internal quotations omitted). The Court concluded that the direct victim of the racketeering activity was the State of New York and the competitive damage to the plaintiff

was too attenuated to satisfy the proximate cause requirement of Holmes.  See id. at 458.

In Beck v. Prupis, 529 U.S. 494, 500-04 (2000), the Court resolved a conflict among the courts of appeals on the question of whether a person injured by an overt act in furtherance of a Section 1962(d) RICO conspiracy may assert a RICO claim if the overt act did not constitute "racketeering activity."  In Beck, several officers and directors of an insurance company orchestrated a scheme to divert corporate funds to personal uses and in furtherance of this scheme, submitted false financial statements to regulators, shareholders and creditors.  Id. at 498.  When the company president discovered the scheme, he notified government regulators about the false statements and was fired by the perpetrators based on a false allegation that he failed to perform his duties.  Id.

The former president sued under RICO, alleging that the corrupt corporate officials engaged in a pattern of racketeering activity, controlled a racketeering enterprise, and conspired to violate RICO by terminating his employment.  Id. at 499.  Both lower courts dismissed the RICO claim on the grounds that a RICO civil action under Section 1964(c)[20] was not available for a RICO conspiracy unless the overt act supporting the conspiracy was an

---

[20] Section 1964(c) authorizes a civil action for damages and attorney's fees for any "person injured in his business or property by reason of a violation of section 1962."

9

act of racketeering. See id. at 505.

Numerous courts of appeals have held that an employee fired for reporting an employer's wrongdoing or for refusing to participate in or conceal an illegal scheme has not been injured by reason of a RICO predicate act. See e.g., Bowman v. W. AutoSupply Co., 985 F.2d 383, 388 (8th Cir. 1993)(employee who refused to participate in fraudulent scheme lacked standing to sue under RICO); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2nd Cir. 1990)(employee's termination not a foreseeable and natural consequence of employer's fraudulent activities); Kramer v. Bachan Aerospace Corp., 912 F.2d 151, 154 (6th Cir. 1990)(employee who was terminated after reporting employer's scheme to defraud the government had no standing to sue under RICO); Norman v. Niagara Mohawk Power Corp., 873 F.2d 634, 635-37 (2nd Cir. 1989)(same); Burdick v. Am. Express Co., 865 F.2d 527, 529 (2nd Cir. 1989)(no RICO standing for loss of employment for complaining about employer's fraudulent activities); Collum v. Hibernia Nat'l Bank, 859 F.2d 1211, 1214-15 (5th Cir. 1988)(employee did not have standing to sue under RICO where he was fired for refusing to participate in a RICO predicate act); Nodine v. Textron, Inc., 819 F.2d 347, 349 (1st Cir. 1987)(plaintiff discharged for whistle-blowing lacked standing to sue under RICO because his injury was not a result of the alleged RICO violation but of defendants' decision to fire him after he reported the scheme to his

superiors); ; Morast v. Lance, 807 F.2d 926, 933 (11th Cir. 1987)(no standing under RICO for a wrongful discharge).

In the case before the court, Plaintiff claims that she was terminated as a result of her complaints about Yoxall's alleged wrongful diversions of corporate funds. Stated another way, Yoxall's alleged fraudulent activities did not directly harm Plaintiff; it was her decision to alert management to Yoxall's actions that caused Yoxall to retaliate by ending her employment. Taking Plaintiff's allegations to be true, the amended complaint only alleges an indirect relationship between Yoxall's scheme and Plaintiff's termination. Therefore, even if the court were to assume that these overt acts could be deemed mail or wire fraud, court concludes that Plaintiff has failed to allege an injury under the RICO statute.

### b. Witness Tampering and Retaliation Against a Witness

Plaintiff also claims predicate acts arising under Sections 1512(b)(witness tampering) and 1513(e)(retaliation against a witness). Section 1512(b) states:

> Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to–
>
> > (1) influence, delay or prevent the testimony of any person in an official proceeding;
> >
> > (2) cause or induce any person to–
> >
> > > (A) withhold testimony, or withhold a record, document or other object,

11

>> from an official proceeding;
>
> (B) alter, destroy, mutilate or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
>
> (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
>
> (D) be absent from an official proceeding to which such person has been summoned by legal process; or
>
> (3) hinder, delay or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole or release pending judicial proceedings.

Plaintiff's amended complaint does not allege the existence of an "official proceeding," a statutory requirement of witness tampering under Section 1512(b)(1) and (2). The existence of an "official proceeding" must be broadly interpreted as Section 1512(f)(1) cautions that, for purposes of the section, an "official proceeding need not be pending or about to be instituted at the time of the offense." Section 1512(f) has its limits, however.

In Arthur Andersen LLP v. United States, 544 U.S. 696, 708 (2005), the Court stated that while Section 1512's prohibition against witness tampering does not require a pending proceeding, there must be a *foreseeable* proceeding. The Court stated, "A

'knowingly . . . corrup[t] persuade[r]' cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material." Id. Citing to United States v. Aguilar, 515 U.S. 593, 602 (1995), the Court concluded that there must be a nexus between the obstructive act of witness tampering and a some official government proceeding. Id.; see also United States v. Simpson, 741 F.3d 539, 552 (5th Cir. 2014)("A proceeding must at least be 'foreseen' such that the defendant has in contemplation some particular official proceeding in which the destroyed evidence might be material.").

Here, Plaintiff has failed to allege that Defendants' termination of her employment was taken because they intended to obstruct a foreseeable official proceeding. Plaintiff's amended complaint does not allege facts that would support a conclusion that Defendants had any awareness that an IRS investigation was foreseeable.

Tracking the language of Section 1512(b)(3), Plaintiff fails to allege that her termination was for the purpose of hindering, delaying or preventing her from communicating with the IRS. In her amended complaint, Plaintiff alleged that after Yoxall became upset that she had communicated with Rosen Swiss AG's chief executive officer, she told Yoxall "that to the extent that she communicated information to the Internal Revenue Service she not only was

13

discharging her duties, but also was fulfilling obligations imposed on her by law."[21] This statement is inadequate to allege a violation of Section 1512(b)(3) because it does not allege that Yoxall or Oprona sought to delay or prevent her from communicating with the IRS. In fact, it is not clear from this allegation if Plaintiff had initiated contact with the IRS at the time the statement was made. The court concludes that Plaintiff has failed to allege a predicate act arising under Section 1512(b)(3).

Section 1513(e) states:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense shall be fined . . . .

This section requires that a defendant have the specific intent to retaliate against a plaintiff for providing to a law enforcement officer truthful information. Plaintiff fails to allege that she initiated a complaint to the IRS, the date on which she contacted the IRS about Yoxall's alleged scheme to defraud the United States and when Yoxall and/or Oprona became aware that she had done so. Plaintiff's amended complaint merely references two conversations between herself and Yoxall on July 29, 2015, and July 31, 2015, in which Yoxall demands to know under what conditions she would resign

---

[21] See Doc. 34, Pl.'s 1st Am. Compl. p. 12.

her employment.[22] This is insufficient to state a predicate act under Section 1513(e).

The court therefore finds that Plaintiff has failed to allege facts that would support predicate acts of witness tampering or witness retaliation under Section 1512(b) and Section 1513(e).

**2. Continuity**

Defendants argue, in the alternative, that Plaintiff has failed to allege a pattern of continued racketeering activity. In order to state a claim under RICO, a plaintiff must show "either . . . a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., v. Nw. Bell Tel. Co., 492 U.S. 229, 240-41 (1989).

The Fifth Circuit has explained:

> To establish continuity, plaintiffs must prove . . . either a closed period of repeated conduct, or an open-ended period of conduct that "by its nature projects into the future with a threat of repetition." A closed period of conduct may be demonstrated by "proving a series of related predicates extending over a substantial period of time." An open period of conduct involves the establishment of "a threat of continued racketeering activity." This may be shown where there exists a "specific threat of repetition extending indefinitely into the future," or "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." The Court has stated that

---

[22] Id. p. 13. The amended complaint alleges: "On July 29, 2015, Yoxall met with Arroyo and asked Arroyo to submit terms under which she would voluntary [sic] leave her employment with Oprona." "On July 31, 2015, Yoxall had another angry confrontation with Arroyo and demanded that Arroyo respond with terms under which she would voluntarily leave Oprona. Arroyo again responded that she did not wish to resign." Id.

    in enacting RICO, Congress was concerned with "long-term criminal conduct."

<u>Word of Faith World Outreach Ctr. Church, Inc.</u>, 90 F.3d at 122 (quoting <u>H.J., Inc.</u>, 492 U.S. at 239-242)(internal citations omitted). Where the RICO allegations concern only a single scheme with a single purpose, courts have held that a pattern of racketeering has not been shown. <u>See</u> <u>Word of Faith World Outreach Ctr. Church</u>, 90 F.3d at 123; <u>Conry v. Daugherty</u>, Civ. Action No. 10-4599, 2011 WL 2473959 at *4 (E.D. La. June 22, 2011)(unpublished).

    Turning to the witness tampering/witness retaliation predicate acts first, even if Plaintiff were able to allege sufficient facts to raise a such a claim, those predicate acts took place over no more than two consecutive months - July and August 2015. This would be insufficient to meet the continuity requirement of RICO. <u>See</u> <u>Word of Faith World Outreach Ctr. Church</u>, 90 F.3d at 122.

    Although Plaintiff argues that the mail and wire fraud predicate acts took place over a longer period of time, from "at least 2010 through 2015,"[23] the acts were part of a single, discrete scheme to evade the imposition of taxes for one individual, which fails to meet the "continuity or racketeering" requirement of RICO. <u>Word of Faith World Outreach Ctr. Church</u>, 90 F.3d at 123 (citing <u>H.J. Inc.</u>, 492 U.S. at 241).

---

[23]   <u>See</u> <u>id.</u> Doc. 34, Pl.'s 1st Am. Compl. pp. 16-17.

16

In light of the foregoing, the court **RECOMMENDS** that Plaintiff's RICO cause of action be dismissed. Plaintiff has already amended her complaint once in response to a motion raising pleading deficiencies. The court is reluctant to grant further opportunities to amend because it believes that additional facts will not overcome the applicable law. However, if Plaintiff believes that she can adequately address the pleading deficits cited in this memorandum, she must include those proposed amendments in timely-filed objections to this memorandum.

**B.  Sabine Pilot Claim**

If the above recommendation is adopted by the district court, the federal claim that underpins the court's removal jurisdiction will be dismissed, leaving Plaintiff's sole claim as one arising under state law. Defendant has moved to dismiss this claim.

28 U.S.C. § 1367(c) states:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:
>
> > (1) the claim raises novel or complex issues of State law.
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which is has original jurisdiction,
> >
> > (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In the present case, the court has dismissed the claim over which it had original jurisdiction. This case has not progressed beyond the Rule 12 stage; no scheduling order has been entered; and discovery has not commenced. In the court's opinion, the exercise of supplemental jurisdiction over a purely state law claim would be an abuse of discretion. See Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 876 (5th Cir. 2000). The court declines to reach Defendant's motion to dismiss the state law claim and recommends that this claim be remanded to the 269th Judicial District Court of Harris County, Texas.

## IV.  Conclusion

For the reasons discussed above, it is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 35) be **GRANTED IN PART** and that Plaintiff's state law claim be **REMANDED** to state court.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers

of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 11th day of April, 2017.

_____
U.S. MAGISTRATE JUDGE